STATE OF NEBRASKA, APPELLEE, V. CRAIG A. OWEN,
ALSO KNOWN AS CRAIG A. OWENS, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. TOMMY A. SWEET,
APPELLANT.
263 N. W. 2d 451

Filed March 8, 1978. Nos. 41451, 41471.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellants.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.

Appellants were convicted of robbery and use of a firearm in the commission of that robbery. Appellant Owen asserts three assignments of error on appeal: (1) Defendant's confession should have been suppressed; (2) the evidence was insufficient to support the verdict; and (3) defendant's motion for mistrial should have been granted. Appellant Sweet joins in the latter two assignments of error. We affirm.

Owen, at trial, denied he had made a confession. Apparently his position here is that if he did, it was

involuntary because at the time he was under the influence of drugs and alcohol, he was manhandled by the interrogating officer when the defendant attempted (as he admits) to destroy notes which the officer was making, and thirdly, that his responses to the Miranda warnings (which he does not deny were given) were equivocal. The evidence with reference to the third of these contentions as related by the interrogating officer and by a supporting exhibit was as follows: "A. Yes. The first question I asked him was: 'I would like to advise you that I am a police officer. Do you understand that?' His response was: 'Yes.' The second question was: 'You have a right to remain silent and not make any statements or answer any of my questions. Do you understand that?' To this he answered: 'Fifth.' The next question: 'Anything that you may say can be and will be used against you in court. Do you understand that?' His answer to this was: 'Fifth.' The next question: 'You have the right to consult with a lawyer and have the lawyer with you during the questioning. Do you understand that?' His answer was: 'Fifth.' The next question: 'If you cannot afford a lawyer, the Court will appoint one to represent you. Do you fully understand that?' His answer to this was: 'Fifth.' The next question: 'Knowing your rights in this matter, are you willing to make a statement to me now? His answer was: 'Yes.' "

Prior to trial the court held a separate hearing as required by Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908, 1 A. L. R. 3d 1205; and specifically found that the Miranda warnings had been given, that the defendant understood them, and that the confession had been voluntarily made and was therefore admissible. The court made identical findings with reference to Sweet's confession. It would serve no useful purpose to recite the details of the evidence as they relate to the defendant Owen's

mental state and the effect of the scuffle upon him. It is clear that the evidence presented a question for the trial court's factual determination. The same is true of the answer "Fifth" to certain of the Miranda warnings. It is apparent that those answers could properly be determined to be affirmative answers, showing a degree of sophistication on the part of the defendant Owen and were indicative of the fact that he knew he was receiving the warnings required by the Fifth Amendment to the United States Constitution as interpreted in Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. We have said: "In determining whether the State has shown the admissibility of custodial statements by the requisite degree of proof, this court will accept the factual determination and credibility choices made by the trial judge unless they are clearly erroneous and in so doing we will look to the totality of the circumstances." State v. Irwin, 191 Neb. 169, 214 N. W. 2d 595. At trial the jury was instructed in accordance with NJI Nos. 14.52 and 14.52A.

We now turn to the question of the sufficiency of the evidence to sustain the jury's finding of guilt. The only substantial question in this regard is the sufficiency of the identification of the defendants as participants in the robbery. On the day in question at about 11:15 p.m., four black males, wearing a variety of masks and disguises which included a wig and stocking or pantyhose masks, robbed the Sip'n-Chin Bar located in Omaha's north side. One of the robbers carried a can of mace, one a handgun, and a third a rifle. The fourth apparently was unarmed. The robbery took about 30 to 45 seconds. The bartender, who was called as a prosecution witness, could not identify any of the suspects, although he acknowledged that he was well acquainted with the two defendants here involved, who were frequent patrons of the bar. After the Sip'n-Chin robbery and later the same night, three unmasked black males

made an unsuccessful attempt to rob a jitney driver in the same general area where the bar was located.

Both incidents were reported to the police, together with information as to the disguises worn and the weapons used in the Sip'n-Chin robbery and some details as to clothing worn by two of the robbers in either the Sip'n-Chin robbery or the unsuccessful attempt to rob the jitney driver. The record is unclear on this last point.

At about 4 a.m., two police cruiser officers observed an automobile containing four black males traveling slowly north on 30th Street near Lake Street in Omaha. When this auto made a turn onto a side street, they decided to follow it. The automobile seemed to be following a circuitous route and the officers ultimately stopped the car for investigation at 30th and California Streets. When the officers approached the car, one of them noted that the trousers of one of the occupants and the coat of another met the description of clothing worn in one of the earlier incidents. The occupants were ordered out of the car. The officers then noted a black afro wig in the car and a partially hidden rifle. The men were placed under arrest. A further search disclosed a can of mace and that one of the parties, Sweet, had a handgun in his pocket. A pair of pantyhose was also found in the car.

Later, confessions were obtained from the two defendants here involved and they implicated two other persons who were not occupants of the car at the time of the arrests.

At trial the defendants took the stand in their own behalf. The defenses were alibi. Their explanations of their whereabouts and activities at the time of the Sip'n-Chin robbery and afterward until the time of the arrest raised questions of credibility which were for the jury to decide.

The evidence, including the confessions and the physical items found in the possession of the defend-

ants at the time of their arrest, was sufficient to support the jury finding of guilty. In determining the sufficiency of the evidence to sustain a conviction in a criminal prosecution, it is not the province of this court on appeal to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the jury. State v. Edwards, 197 Neb. 354, 248 N. W. 2d 775.

The contention of the defendants that a mistrial should have been declared is founded upon three separate occurrences during the course of the trial. During the State's rebuttal testimony, a police officer was called for the purpose of corroborating the testimony as to the confession of Owen given to the interrogating officer. During this rebuttal examination the officer was asked a leading question as to whether he had heard Owen admit being involved in the Sip'n-Chin robbery. An objection on the ground that the question was leading was sustained. The prosecutor then asked the following question and received the following answer: "Q. . . . What did you hear Mr. Owen say while in the interview room? (DEFENDANT'S COUNSEL): Objection, leading and suggestive. BY THE COURT: Overruled. THE WITNESS: He admitted being in the robbery of the Sip 'n' Chin Bar along with another robbery that happened a few hours later of a jitney driver." The defendant's counsel objected, moved to strike the answer, and moved for a mistrial. The motion to strike was granted and the jury was admonished to disregard the answer. The motion for a mistrial was overruled. The prosecutor then asked the following question, to which no objection was made, and received the following answer: "Q. . . . Sgt. Gutchewsky, what, if anything, did you hear Mr. Owen say regarding the Sip 'n' Chin robbery that you were investigating? A. He admitted taking part in that robbery."

It would rather clearly appear from the above that the prosecutor sought to avoid bringing in the admission of the other crime. When the objection to the leading question was sustained for the first time, the officer evidently was led to believe that he should relate everything that he heard. Better witness preparation might have avoided the problem, but it rather clearly appears, it seems to us, that there was no deliberate attempt to inject the objectionable evidence.

During Sweet's direct examination he explained his reason for carrying the handgun which was on his person. This explanation included the statement that on the preceding evening while about to enter his home at around the hour of 5 p.m., some unknown person fired a shot at him, and that later that night, in the early morning hours, when he and Owen embarked on an errand to obtain from a female friend of Sweet's girlfriend a wig and some pantyhose which the former had borrowed, Sweet took the handgun with him for protection. On cross-examination with reference to the above matter, the prosecutor asked: "Q. Was this the first time you had ever been out early in the morning and carried your .32 pistol loaded? A. Yes. Q. Do you know that it's a felony to carry a weapon like that concealed on your person?" Objection was made and sustained.

The third occurrence was the following. As indicated earlier, Owen contended the confession that he denied giving was involuntarily made because he was under the influence of drugs. He explained that the drug was Valium which he had taken from a bottle of that drug which his wife had obtained by prescription from a physician. On cross-examination with reference thereto the following occurred: "Q. That is a prescription-type drug, isn't it? A. Yes. Q. Do you know that that's a felony to distribute that sort of thing?" Objection was made and sustained.

It is apparent that the last questions in each of the last two series were completely unwarranted. However, in the total context of the case where the defendant Sweet admitted carrying the weapon and when Owen had introduced the evidence of the use of the drug, we cannot see that any prejudice resulted to the defendants which would require declaration of a mistrial.

AFFIRMED.